UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ODING DILL, :
 :  Civ. No. 09-2592(DRD)
    Petitioner :
 :  **O P I N I O N**
v. :
 :
UNITED STATES OF AMERICA, :
 :
    Respondent. :
_____:

Oding Dill
27932-050
Federal Medical Center, Devens
P.O. BOX 879
Ayer, MA 01432
    *Petitioner, Pro Se*

Paul J. Fishman
United States Attorney
BY:   Jonathan W. Romankow
Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102
    *Attorney for Respondent*

**Debevoise, Senior District Court Judge**

    Petitioner, Oding Dill, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a sentence imposed upon him on September 17, 2008.

# I. Background

    On April 17, 2007, pursuant to a plea agreement, Petitioner entered a plea of guilty to a one-count Information charging him with conspiracy to export more than 50 grams of cocaine base and a quantity of heroin in violation of 21 U.S.C. §§ 953(a) and 960(b)(1)(A), and in violation of 21 U.S.C. § 963. The plea agreement contained a factual stipulation that the offense

involved at least 297 grams of cocaine base and at least 82 grams of heroin.

A hotly contested sentencing hearing was held on September 15, 2008. A critical issue was whether Petitioner was entitled to the benefit of the Safety Valve provision. The government contended that Petitioner was an organizer or manager of the several persons who participated in exportation of illegal drugs from the United States to Bermuda and thus failed to meet one of the five criteria for qualification for the Safety Valve provision. If that were the case, Petitioner's mandatory minimum sentence would have been 120 months and, according to the government's calculations, the sentencing range would have been 120 to 135 months. The court accepted the argument of defense counsel that Petitioner was not an organizer or manager and that the Guidelines prison range was 70 to 87 months.

Petitioner's counsel argued for a downward departure on two grounds, family ties and responsibilities and the medical condition of the Petitioner. The government strenuously opposed departure. Petitioner suffered from a hereditary condition known as familial adenomatous polyposis, sometimes known as an inherited colorectal cancer syndrome. Persons suffering from the condition require continuous treatment and testing and have to perform five or ten bowel movements each day. Petitioner was incontinent at night, requiring that he get up a number of times to shower and cleanse himself.

At the sentencing hearing the issue of whether the prison system could handle Petitioner's medical condition arose. The government introduced two detailed letters of a Federal Bureau of Prison Health Systems Administrator describing the manner in which the Bureau of Prisons could adequately address Petitioner's condition.

The court concluded that the combination of Petitioner's family circumstances and

medical condition supported a downward departure and sentenced Petitioner to 24 months imprisonment. Although Petitioner's medical condition was an important factor in the decision to grant a downward departure, the court also concluded that the prison system could handle that condition at least for a limited period of time. In a follow-up letter the Health Systems Administrator advised the Assistant United States Attorney handling the case that Petitioner had been designated to the Federal Medical Center (FMC) Devens in Ayer, Massachusetts and that:

> I am aware that this medical referral center currently houses other inmates with similar issues and diagnosis as Mr. Dill. In addition, I have confirmed that FMC Devens has housing units in which inmates needing frequent access to bathing and restroom facilities are assigned. While in the unit, with exception of count time, an inmate may access the restroom and shower facilities as frequently as necessary, including during the evening and overnight hours.

Petitioner asserts that he is entitled to the relief he seeks because he was deprived of effective assistance of counsel. Counsel was ineffective, according to Petitioner, because (1) at all times during the prosecution and sentencing of the case she failed to advise or discuss with him the effect of his conviction upon his immigration status and (2) she failed at the time of sentencing to challenge the evidence of the Bureau of Prison's ability to deal with Petitioner's medical condition and to demand that an evidentiary hearing be held on that issue.

## II. Discussion

A. General: To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and that he was prejudiced by the attorney's performance. Strickland v. Washington, 466 U.S. 668 (1984); United States v. Booth, 432 F. 3d 542, 546 (3d Cir. 2005). The prejudice prong in the context of the plea process focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process. Id. Thus to establish prejudice, Petitioner "must demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence" or would have "pleaded not guilty and insisted on going to trial." Id., at 546-47.

Petitioner has not demonstrated, and could not demonstrate, that his attorney's performance was deficient or that he was prejudiced in any way by his attorney's performance and that he would have received a lower sentence but for his attorney's actions. In fact, the record demonstrates that by reason of his attorney's diligence and creative efforts he received a highly favorable sentence, one strongly opposed by the government.

     B. Immigration Status: Petitioner faced deportation to Bermuda by reason of this conviction. He and his attorney recognized that immigration issues existed. The Court asked defense counsel at the sentencing hearing: "Aren't you also facing deportation as a practical matter?" Defense counsel responded, "Well, your Honor, I think because his wife is an American citizen, and he does have the children, that there are some applications that we could make, and we'll review that when we get to it." (11/15/07 Transcript at 5-6).

It is obvious that Petitioner was aware of his immigration vulnerability. There was nothing that either his attorney or anyone else could do to predict what action Immigration and Customs Enforcement would take in response to his plea and sentence and what disposition would be made of any applications Petitioner might make for immigration relief. This was totally outside of defense counsel's area of control and responsibility.

A conviction of a crime may carry with it a myriad of collateral consequences, including immigration status. "Rule 11 does not require a sentencing court to explain 'collateral'

consequences of a guilty plea to a defendant, including immigration consequences." United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988). If a Rule 11 plea can be entered without advising about collateral consequences, there can be no basis for holding that such failure can be a ground for a § 2255 petition.

Furthermore, as the exchange between court and counsel at the sentencing hearing demonstrates, Petitioner was well aware that a conviction, whether at trial or by a plea, subjected him to deportation proceedings and that he had discussed that situation with counsel. There is not much more that counsel could have done. In face of that knowledge Petitioner pled guilty to a crime of which he was clearly guilty. He was not prejudiced by any action or inaction of his counsel with respect to deportation, as he unquestionably would have pled guilty to the offense. United States v. Nino, 878 F. 2d 101, 105 (3d Cir. 1989).

    C. Failure to Demand Evidentiary Hearing: A principal basis for Petitioner's downward departure motion was his medical condition. Petitioner faults his counsel for failure to seek an evidentiary hearing on the question of the Bureau of Prison's ability to handle Petitioner's adenomatous polyposis. His counsel had performed extraordinarily well as his advocate. She negotiated a plea agreement that enabled Petitioner to argue for application of the safety valve, downward departures and variances. Counsel created a substantial record, providing in great detail the unusual circumstances of Petitioner's family and the history and continuing consequences of his medical condition. The vast array of medical records and opinions was sent to the Bureau of Prisons.

On April 1, 2008, the government received a lengthy letter from Barbara J. Cadogan, Health Systems Administrator for the BOP, which explained how Petitioner would be handled

through the BOP's assignment process so that his medical needs would be fully attended to.  The letter described the kinds of medical facilities that were available and the array of medical specialists and equipment that the BOP draws upon.  Thereafter Petitioner's counsel sent more records to Ms. Cadogan and recited Petitioner's medical situation and specific requirements.  On April 14, 2008, Ms. Cadogan responded, stating that she had evaluated counsel's letter and the attached medicals records.  She explained with specifics how the BOP could meet Petitioner's medical needs.[1]

Defense counsel fully presented the evidence supporting her motion for a downward departure based in large part on medical considerations.  She succeeded in obtaining a significant

---

[1] In a Reply to the government's response to his Petition, Petitioner states:

> As a result [of Petitioner's medical condition] Petitioner has been designated to Federal Medical Center, Devens, a medical facility in which Petitioner is held in a two man cell under lock-down conditions from 10:00 p.m. until 5:30 a.m. with no access to showers during the night.  Despite the fact that the staff at Federal Medical Center, Devens are well aware of the Petitioner's incontinence during the night he is forced to lie all night in his feces, denied the periodic cleaning and showers required by his condition.

In response to this allegation, the government responded:

> Furthermore, a BOP attorney at the Devens Correctional Facility, where Petitioner Dill is being housed, has informed this Office that there are formal administrative remedy procedures in place whereby inmates can file written complaints regarding their care or absence thereof.  According to the attorney, Petitioner Dill has only filed two such administrative remedy submissions with the Warden at Devens.  Both of these submissions were filed in June 2009, one requesting a dietician and the other seeking a colonoscopy.  There have been no other submissions by Petitioner Dill regarding the issues which he now raises on Page 8 of his reply.  Accordingly, this Court should view as suspect the claims which Petitioner now is attempting to raise here and deny the application for further review of his counsel's presentation.  Indeed, Mr. Dill should seek redress internally where the matters can be more effectively and expeditiously addressed.

departure on this ground.  The medical evidence was fully presented, including a detailed account of the manner in which the BOP would handle Petitioner's case.  The letters from Ms. Cadogan provided authoritative information, and there was no need for her to testify to the same effect.  Petitioner's counsel exercised sound judgment when she sought no testimony concerning the BOP's medical facilities.  Such testimony would most likely have served only to strengthen the argument against a downward departure, namely that the BOP was fully capable of meeting all of Petitioner's medical needs.

Thus counsel's failure to insist on testimony on the subject of the BOP's medical capabilities was neither deficient nor did it prejudice Petitioner's sentencing posture.  Rather it was an exercise of sound judgment that in all probability advanced her successful motion for a downward departure.

### III. Conclusion

Petitioner's allegations that he received ineffective assistance of counsel are totally without merit.  His petition will be dismissed with prejudice and without the issuance of a certificate of appealability.

           /s/ Dickinson R. Debevoise
           DICKINSON R. DEBEVOISE
Dated:   December 29, 2009           U.S.S.D.J.